## Walter Goodenow v. Thomas Curtis.

*Mortgages: Condition: Construction.* A mortgage made conditional on removal of certain specified defects of title is held enforceable on performance of the condition, and not defeasible by a showing of other defects not specified in the condition.

*Equity jurisprudence: He who seeks equity must do equity.* A debtor cannot be relieved in equity of a debt he honestly owes, by reason of his creditor having made such an alteration in a security as may prevent his enforcing it according to its terms. He who seeks equity must be prepared to do equity.

33 MICH.—64.

GOODENOW *v.* CURTIS.

*Promissory notes: Conditional promise: Non-negotiable paper: Alteration.*
The alteration by interpolating the words "or bearer" in an instrument
in form of a promissory note, but made expressly subject to the condi-
tions of a mortgage not payable absolutely, but only on certain con-
tingencies, in no way invalidates or changes the legal effect of the
instrument; such an instrument is not negotiable, and the use of the
words in question would not make it so.

*Bill to cancel a mortgage: Mortgage held valid: Decree: Redemption.* The
proper decree where a mortgagor files a bill to cancel a mortgage past
due, and which his adversary is seeking to foreclose, and the court finds
the mortgage to be valid, is a decree for redemption. Every such bill
is regarded as in the alternative a bill to redeem, upon the principle
that a complainant seeking equity must be prepared to do equity.

*Bill to redeem: Dismissal: Absolute foreclosure.* The effect of simply dis-
missing a bill to redeem is an immediate and absolute foreclosure.

*Costs: Damages for vexation.* The decree below having erroneously denied
the defendant his full costs, but he having failed to appeal, on affirm-
ance upon complainant's appeal, which is held to be utterly without
merit, the payment of such costs is imposed as damages for the vexa-
tion.

*Heard April 6.     Decided April 11.*

Appeal in Chancery from Calhoun Circuit.

*T. G. Pray* and *Rienzi Loud*, for complainant.

*Thomas Curtis*, in person, for defendant.

CAMPBELL, J:

This is the third litigation in this court arising out of
the sale of certain hotel premises in Albion.    The present
controversy arises out of an attempt to foreclose a purchase
money mortgage, which Goodenow claims should be restrained;
*first*, because a condition precedent remains unperformed,
and *second*, because of an alleged alteration in the note
secured by the mortgage.    The decision in the court below
was in favor of Curtis on the main issue, and is appealed
from by Goodenow.

The condition referred to arose out of an apparent defect
in the title.    Two thousand dollars of the purchase money
was to be detained until this was removed, and the note
and mortgage were framed accordingly.    The note was
drawn September 9, 1865, payable, with annual interest, on
or before the 9th day of September, 1867, "according to

a certain indenture of mortgage bearing even date herewith, payable to the said Thomas Curtis," etc. The condition of the mortgage, so far as it bears on the defect of title, was as follows:

"The said two thousand dollars being for purchase money for the same, detained by the party of the first part as security for the perfection of the title, to be made good · by the party of the second part, to-wit: a deed from Rice (and wife if any), or in chancery, or his legal representatives, to the party of the first part; also a mortgage to be discharged from record, made by one Joseph French, July third (3), 1841, unless the same shall outlaw prior to the time of payment of this indenture; all to be arranged and completed on or before two years from this date, at which time this mortgage shall become due and be paid; but in case the title shall be made good as aforesaid, prior to the ninth day of September, 1867, the party of the second part shall give ninety days' notice to the parties of the first part of the arrangement of said title as aforesaid, the full time to not exceed two years from the date of this instrument," etc. "*Provided always,* and these presents are upon this express condition, that if the said party of the first part pay or cause to be paid to the said party of the second part, his heirs or assigns, the sum of two thousand dollars, after due notice has been given, or on the ninth day of September, 1867, after the perfection of said title as within specified, with interest annually, according to the condition of a certain note or writing obligatory, bearing even date herewith, executed by the said Walter Goodenow to the said party of the second part, as a collateral security, then these presents and the said note or writing obligatory shall cease and be null and void," etc.

It appears from this document that both parties had fully agreed what defects of title they would stipulate · to have removed. One was the French mortgage, which was to be discharged unless outlawed. The other was the necessity of a deed from one Rice or his heirs. It was not an

agreement or condition to make a perfect title, nor an assertion of the validity or invalidity of any claim of Rice, or under the French mortgage. The condition was definite and specific, that the money should be due when the French mortgage was discharged or outlawed, and when a deed was obtained from Rice or his estate.

It was decided in *Curtis v. Goodenow, 24 Mich. R., 18,* that the French mortgage had become outlawed. That left only the Rice deed to be obtained. A general disclaimer had then been procured from Rice, but it was held insufficient, because a disclaimer, addressed to no one, and containing no release or conveyance, was nugatory. The parties had seen fit for some reason to require a deed from him to Goodenow, and a disclaimer was not such a deed.

The present record shows that conveyances have been obtained from all of Rice's heirs to Goodenow. This is a complete performance of the condition, and no further act is necessary to complete the obligation to pay the sum detained, with interest. If there are any other defects, they formed no element in this condition, and cannot operate to interfere with it; nor can they change the duty to pay the money.

The other point relied on to defeat the mortgage is an alleged alteration in the note, by interpolating the words "or bearer," which it is claimed were not in the note originally.

The note (if it can be properly called a note) reads as follows:

"For value received, I promise to pay Thomas Curtis, or bearer, the sum of two thousand dollars with use, according to a certain indenture of mortgage bearing even date herewith, payable to the said Thomas Curtis, on village lots No. one, two, three, and four, on block thirty-three, in the village of Albion, Mich., to be paid on or before the 9th day of September, 1867, with annual interest. Dated Albion, Mich., Sept. 9, 1865.

"[Signed]      WALTER GOODENOW."

It is certainly a new idea that a debtor can come into a court of equity and ask affirmative relief to get rid of a debt which he honestly owes, because his creditor has made such an alteration in a security as may prevent his enforcing it according to its terms. It is a cardinal principle that equity will not aid a party in-doing that which is not equitable. He who seeks equity must be prepared to do equity. Such a bill as the one before us is unprecedented and anomalous, so far as it seeks to avoid the mortgage for the alleged alteration. If that had been the only allegation, the bill would have been demurrable for want of equity.

But the alteration, if made by Mr. Curtis (upon which, if it were necessary to decide it, we should desire to be very clearly satisfied), in no way changed the legal effect of the instrument. It was made expressly subject to the conditions of the mortgage. The money was not payable absolutely, but only on certain contingencies, and the time of payment was also subject to be fixed or changed by the performance of certain acts by the payee. Such an instrument cannot be made negotiable by the use of the word bearer or order, or by any language, and the insertion of such language would be entirely nugatory. The note is the same without the words "or bearer," as with them, and if they were inserted without Goodenow's consent, the change was in law no change, and the note was not thereby invalidated, either at law or in equity. Curtis has performed all the conditions which he was bound to perform, and the mortgage is wholly due and unpaid, and subject to foreclosure.

The question of alteration was fully presented by the record in the case of *Curtis v. Goodenow, 24 Mich., 18,* before referred to, where it was not considered important enough to be discussed. The bill there was dismissed without prejudice, and only dismissed at all on the ground of the deficiency in the supposed removal of the defect of title. It was not then imagined that the alteration controversy could again appear in court, and still less that it would be deemed material enough to interfere with any of the rights

of Curtis.   We do not understand on what principle the personal liability of Goodenow was deemed by the circuit court to have been discharged.   The defendant has not appealed, and the question is probably not of any moment, inasmuch as the land is evidently full security for the debt, and hereafter it will not be competent to dispute the mortgage or its complete validity, which is now finally determined on the facts.

The proper decree in this case, as in all cases where a mortgagor attempts to get rid of a mortgage which is due and valid, and which his adversary seeks to foreclose, is a decree for redemption.   This was practically decided in *Schwarz v. Sears, Walker's Chancery R., 19*, and has been the constant practice.   Every such bill is regarded as in the alternative a bill to redeem, upon the principle that a complainant seeking equity must be prepared to do equity, and this requires payment of his mortgage debt without further proceedings.   In *Schwarz v. Sears* it was intimated that the decree should be one of redemption or strict foreclosure, and that if a defendant desired a sale and its consequent rights as to deficiency, he should file a cross-bill. That practice has been disapproved, and our practice is now settled in favor of a sale in case of non-redemption.—*Fosdick v. Van Husan, 21 Mich. R., 567.*   The effect of simply dismissing a bill to redeem, is an immediate and absolute foreclosure.   The bill before us contains no alternative prayer for redemption, and the decree below evidently ignored the true nature of such a bill, and did not either order a redemption or impose the usual conditions.   The defendant not appealing, it is questionable whether we can properly disturb it in his favor, but the change ought to be made, and will be made if desired by the complainant.   We do not think it proper to discuss the possible effect of the present decree as it stands.   It finally and irrevocably settles defendant's mortgage rights.   Beyond that we need not examine it.

It was improper to deny the defendant his full costs in

the court below. This defect can be rectified, as we regard this appeal as utterly without merits, and can impose the terms of paying such costs as damages for the vexation. The decree will be affirmed, with the entire costs of both courts, including those which were denied to the defendant by the decree. If the complainant desires to end this litigation which has already fixed his liability, it may be done by making the usual decree for payment in ninety days, or sale on default of redemption.

The other Justices concurred.